ESTATE OF HENRY MAYER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Dockets No. 18325, 37209. Promulgated June 27, 1929.

*Charles H. English, Esq.*, for the petitioner.
*A. H. Fast, Esq.*, for the respondent.

#### OPINION.

TRAMMELL: The petitioner in its pleadings called in question the correctness of the net income for the taxable years as computed by the respondent, and alleged that the respondent erred in the calculation of rentals received and in determining the amount of profit derived from the sale of real estate. These issues were settled by virtue of a stipulation of the parties, filed at the hearing, wherein was set forth the amount of the correct net income for each taxable year. The amounts so stipulated we have adopted and set out in our findings of fact above, and the redetermination of the deficiencies, if any, should be based thereon.

The only issue remaining for consideration here is one of law, namely, whether the amount of the net income, so stipulated for each of the years involved, is taxable to the trust estate, or whether it is taxable to the beneficiaries as distributable income.

The Revenue Act of 1918 provides:

SEC. 219. (a) That the tax imposed by sections 210 and 211 shall apply to the income of estates or of any kind of property held in trust, including—

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

(3) Income held for future distribution under the terms of the will or trust; and

(4) Income which is to be distributed to the beneficiaries periodically, whether or not at regular intervals, \* \* \*

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

(c) In cases under paragraph \* \* \* (3) of subdivision (a) the tax shall be imposed upon the net income of the estate or trust and shall be paid by the fiduciary, \* \* \* .

(d) In cases under paragraph (4) of subdivision (a) \* \* \* the tax shall not be paid by the fiduciary, but there shall be included in computing the net income of each beneficiary his distributive share, whether distributed or not, of the net income of the estate or trust for the taxable year \* \* \*.

The Revenue Act of 1921 contains substantially similar provisions in so far as material here.

It is apparent, therefore, that in order to decide the issue presented, we must first determine whether or not the income in question was properly distributable to the beneficiaries. If the income was properly distributable, whether or not it was actually distributed, it is taxable to the beneficiaries under section 219 (d), *supra*. If the income was not properly distributable, the tax must be paid by the fiduciaries. *William E. Scripps*, 1 B. T. A. 491; *Mary L. Barton*, 5 B. T. A. 1008; *Elizabeth S. Sprague*, 8 B. T. A. 173. See also *Willcuts* v. *Ordway*, 19 Fed. (2d) 917.

The will which created the trust estate contains no provision respecting the disposition of the income in controversy. A codicil to the will directs that the income from the "Mayer Block" should be distributed, and the respondent has conceded that said income is taxable to the beneficiaries. However, there is no instruction otherwise regarding the disposition of income. The decedent neither directed that the income be distributed nor that it be accumulated. Accordingly, we must look to the law of Pennsylvania to determine this question.

The Pennsylvania statute—Act of April 18, 1853, ¶ 9 (P. L. 503)— provides as follows:

No person or persons shall, after the passing of this act, by any deed, will or otherwise, settle or dispose of any real or personal property, so and in such manner that the rents, issues, interest or profits thereof, shall be wholly or partially accumulated for any longer term than the life or lives of any such grantor or grantors, settler or settlers, or testator, and the term of twenty-one years from the death of any such grantor, settler or testator, that is to say, only after such decease during the minority or respective minorities, with allowance for the period of gestation of any person or persons, who under the uses or

trusts of the deed, will, or other assurances directing such accumulation, would, for the time being, if of full age, be entitled unto the rents, issues, interests, and profits so directed to accumulate, and in every case where any accumulation shall be directed otherwise than as aforesaid, such direction shall be null and void in so far as it shall exceed the limits of this act, and the rents, issues, interests and profits, so directed to be accumulated contrary to the provisions of this act, shall go to and be received by such person or persons as would have been entitled thereto if such accumulation had not been directed, * * *.

The Supreme Court of Pennsylvania has held in numerous cases that, under the statute above quoted, if a will creating a trust provides for the accumulation of income beyond the period specified, or if under the provisions of the will the income might possibly be accumulated beyond said period, such provision is null and void *in toto*, and the income is distributable to those who would be entitled to receive it if there had been no such provision in the will. See *McKee's Appeal*, 96 Pa. 277; *Schwartz's Appeal*, 119 Pa. 337; 13 Atl. 212; *Sharp's Estate*, 155 Pa. 289; 26 Atl. 441; *Edwards' Estate*, 190 Pa. 177; 42 Atl. 469; and cases cited.

It further appears that, under decisions of the Pennsylvania courts, if the will contains no specific provision relating to the disposition of the income, it must be regarded as forming a part of the corpus of the estate and distributable in the same manner. In other words, in the absence of specific directions in the will, the income accumulates as part of the corpus, unless such accumulation violates the act of April 18, 1853, *supra*, in which latter event the income is distributable to the beneficiaries.

In the instant case, the will provides that the trust estate may continue during the lives of any three of the trustees, who are also the principal beneficiaries. It is obvious, therefore, that the life of the trust is indefinite and may continue beyond the period of 21 years from the death of the testator, with allowance for the period of gestation, as provided in the statute. Hence, under the rule of the Pennsylvania courts above referred to, any accumulation of the income in excess of the necessities of the trust itself would be unlawful, and the income would be regarded as distributable to the beneficiaries to the same extent as if an affirmative provision to that effect were contained in the will.

In *McKee's Appeal*, *supra*, the decedent in his will made no provision for disposition of the income. He devised his house to his widow for life, together with an annuity of $2,000, and directed that upon her death the residue of his estate should be divided equally among his children. In considering the status of the income of the estate, the Supreme Court of Pennsylvania, in its opinion, said:

Frederick McKee died on the 21st of March 1865, leaving to survive him a widow and two children, one of whom is the petitioner. By his will he devised

his mansion house to his wife for life, and also bequeathed to her, for a like period, an annuity of $2000. He then made the following direction: "And upon her decease I will and bequeath said house, as also all the rest of my worldly estate, to my children in equal shares, and in default of children or lineal heirs of my body, at the time of her decease, I will and bequeath all my worldly estate to my brothers and sisters in equal shares." In this we have a precedent estate so limited as to determine on an event which must certainly happen, that is, the death of the widow, and the remainder so limited to ascertained persons *in esse*, Frederick and Melissa McKee, that the preceding estate may determine before the estate limited in remainder. It follows that this is a vested remainder—an estate vested *in praesenti*, but enjoyable *in futuro;* that is, upon the mother's death.

The corpus of the estate is thus easily disposed of, for of that the testator determined that it should not go to his children until the death of his widow. But since his death there have been large accumulations arising from rents, issues and profits; accumulations which exceed the original estate, and the necessities of the trust, and the serious question is, what disposition shall be made of them? Were we allowed to dispose of the matter, as we may suppose the testator would have disposed of it, had he known the facts as they now exist, we would say, without hesitation, these accumulations shall go to his children, for so he would have directed. But as it is obvious that he did not anticipate an increase so large to his estate after his decease, so it is just as obvious that he entertained no intention concerning it. Hence, of such intention we can predicate nothing. On the other hand, were it not for the eighth section of the Act of 18th April 1853, the question would not be difficult of solution; for, before that act, accumulations as necessarily and naturally formed part of the original estate as vegetable accretions form part of the growing plant. In such case, as the children must wait for the possession of the corpus of the estate until the time fixed for the expiration of the precedent trust, so must they wait for the accretions which by natural growth form part of the corpus. But the Act of 1853 has altered this, and made such accumulations unlawful and void, unless, with relation to them, its terms and conditions are strictly followed.

If, in the present case, we compare the provisions of the will with the terms of the act, we will find that not only were the latter not complied with, but the testator, as we have already said, not having any such accumulations in view, never intended to comply with them. The extreme period allowed for accumulations by the act is twenty-one years, with the additional allowance of the ordinary time for gestation. Here the time is indefinite, it may be much more than twenty-one years, for it depends upon the life of Mrs. McKee.

In *Sharp's Estate, supra*, the decree of the orphans' court was affirmed by the Supreme Court of Pennsylvania in a *per curiam* decision, and the appeal dismissed. In the opinion of the orphans' court, thus approved by the Supreme Court, it was said:

The accumulation of one-half of the income, as provided in the first codicil, is void, and Rollin takes the same for life, as provided in the original will. The accumulation, as provided in said codicil, is to continue during Rollin's life and the life of any widow he may leave, and so this provision is void *in toto. Washington's Estate*, 75 Pa. St. 102; *McKee's Appeal*, 96 Pa. St. 277; *Carson's Appeal*, 99 Pa. St. 325; *Brooks Estate*, 140 Pa. St. 84, 21 Atl. Rep. 240.

In *Edwards' Estate, supra,* the Supreme Court of Pennsylvania reviewed at some length its prior decisions on this question, and in the course of its opinion said:

The first and principal contention of the trustee is that "the trust for accumulations is valid during the minority of the children of George J. Edwards"; that "it is not void *in toto,* but only *pro tanto.*" *Brown* v. *Williamson's Ex'rs.,* 36 Pa. St. 338, is cited as authority for this position. But it is not, in any essential particular, distinguishable from *Ashurst* v. *Givens,* 5 Watts & S. 323. It was not in any degree affected by the act of April 18, 1853, nor was it decided therein that the trust was transgressive. In *Re Washington's Estate,* 75 Pa. St. 102, it was held that, under the act of 1853, the direction for accumulation was void, because it was declared to be for the benefit of the testator's estate, although it was provided by him that, after his daughter, Anna, reached full age, all the excess of income of his estate beyond the annuities to her and his mother and sister should be paid to his said daughter, "for her sole and separate etate, in addition to the annuity of fifteen hundred dollars she would then be entitled to receive". His daughter, Anna, was his only child, and the accumulations therefore belonged to, and were paid to, her. In *Schwartz's Appeal,* 119 Pa. St. 337, 13 Atl. 212, it was held that the direction to accumulate was void on the ground that the time allowed for accumulation was indefinite, being for the lifetime or widowhood of the widow, and permitting a longer period than that allowed by the act of 1853. The learned judge of the orphans' court said: "The extreme time allowed for accumulations by the act of April 18, 1853 (P. L. 503), is 21 years, with the additional allowance for the ordinary period of gestation. In this case it is indefinite, depending on the one hand, upon the 'life or widowhood of the widow'. It may be for a longer or shorter period than 21 years. The possibility of its being for a longer period renders the provisions in the will void and of no effect. *McKee's Appeal,* 96 Pa. St. 377. So, also, on the other hand, these accumulations are for a period longer and other than during the minority of the children." This court, on appeal, approved the conclusion of the court below, and held that the principle on which it was based was undoubtedly sound. *Grim's Appeal,* 109 Pa. St. 391, 1 Atl. 212, was likened by this court to *McKee's Appeal, supra,* in which the direction to accumulate was held to be illegal and void, and the accumulations passed under the intestate laws to the widow and next of kin, in equal moities.

In view of the decisions of the Pennsylvania courts all of the income involved in these proceedings must be regarded as distributable to the beneficiaries. Under the law of Pennsylvania it clearly could not legally be held for future distribution. The beneficiaries had the legal right to receive it. In fact, a portion of the income was actually distributed. The fact that there was no specific provision of law or a valid provision of the trust instrument for any particular periods at which distribution should be made, we think, is not important.

In our opinion Congress clearly did not intend that income of a trust which could not be accumulated, but which was required to be distributed, should escape taxation entirely merely by the manner of its distribution. If the income did not come within any of the other subsections of section 219 and was to be *distributed* to bene-

ficiaries, we think that it was taxable to the beneficiaries as income under subsection (a) (4) of section 219. Omitting the income coming within subsections (a) (1) and (a) (2) of section 219 as not applicable, income was either to be held for future distribution or was to be distributed. If it was not one it was the other. The provision " whether or not at regular intervals" clearly indicates that the times or periods of the distribution were not the determining factors. But here we have income which the trust had the right to receive. The trust had the right and duty imposed on it to incur and pay necessary and proper expenses in carrying on the business. With such duties to perform, clearly, accounting was necessary to determine the income before it could be distributed. At such periods as income was determinable, it was to be distributed. Income which is to be so distributed we think comes within subsection (a) (4) of section 219 and is taxable to the beneficiaries.

Reviewed by the Board.

*Judgment will be entered for the petitioner.*